**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| HONG KONG XINGTAI INTERNATIONAL TRADE CO. LTD.<br><br>    Plaintiff,<br><br>    v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 1:23-cv-15481<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Hong Kong Xingtai International Trade Co. Ltd. ("Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"),[1] attached hereto, as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

---

[1] Defendant No. 91 appears on Schedule A as having the Seller Aliases Joybuy Fashion. Upon information and belief, this defendant sells products on Walmart.com via the respective Joybuy marketplace platforms owned and operated by Jingdong E-commerce (Trade) Hong Kong Corporation Limited ("Jingdong") and JD E-commerce America Limited ("JD America"). Plaintiff intends to serve any forthcoming temporary restraining order on Jingdong and JD America to obtain the identity of Defendant No. 91. Additionally, Plaintiff intends to amend Schedule A once this information is known.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented invention, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II.      INTRODUCTION

3.      Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities,

2

locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.   THE PARTIES

4.      Plaintiff, Hong Kong Xingtai International Trade Co. Ltd., is a Hong Kong based private company with its principal place of business at Unit 1406A, 14/F, The Belgian Bank Building, Nos. 721-725 Nathan Road, Kowloon Hong Kong and is the owner of the patent asserted in this action.

5.      Plaintiff is the owner, by assignment, of all right, title, and interest in U.S. Patent No. 7,819,545 B2 (the "'545 Patent"). A true and correct copy of the '545 Patent is attached hereto as **Exhibit 1**.

6.      The '545 Patent issued on October 26, 2010. *See* Exhibit 1.

7.      The '545 Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

8.      Claim 1 of the '545 Patent reads:

An outdoor decorative solar powered lighting system, comprising

a flexible, elongated light string;

an electrical wire extending through the light string and commensurate in length therewith;

a plurality of sockets mounted on the light string and spaced evenly therealong;

a plurality of light bulbs mounted to the sockets with one light bulb being mounted to each

respective socket;

a solar collector electrically connected to the light string and including a bottom side and an upper side;

the collector including a housing and at least one solar panel supported in the housing for collecting radiant energy from the sun;

a rechargeable battery contained within the housing and electrically connected to the solar panel for providing energy to the chargeable battery; and

a regulator switch electrically interconnected to the battery and the light string for automatically switching the light bulbs on and off whereby the switch is disposed to the open state from sunrise to sunset thereby preventing the light bulbs from lighting and the switching automatically going to the closed state upon sunset thereby closing the circuit and causing the light bulbs to light.

9. Claims 2-3 of the '545 Patent are dependent claims stemming from Claim 1. *See* Exhibit 1.

10. Plaintiff invents, manufactures, markets, and sells a variety of outdoor decorative string lights. Plaintiff sells its products, including products that embody the '545 Patent (collectively, "Plaintiff's Products"), exclusively direct-to-consumer through its website (www.euorium.com) and through its Amazon webstore.

11. Plaintiff provides notice of its patent rights on all of Plaintiff's Products. Plaintiff's Products which are listed on Amazon have the patent number appear in the product title, whereas the product listed on its webpage states that patent number at the bottom of its description.



Solar String Lights for Outside, Waterproof Garden Solar String Lights, 18FT with 10 Shatterproof LED Bulbs G40, Outdoor Solar Hanging Lights for Garden, Camping Decor Patent Number: US7819545B2
Brand: Spanrde

$25.99 ($13.00 / Fl Oz)

Get Fast, Free Shipping with Amazon Prime
FREE Returns ⌄
Eligible for Return, Refund or Replacement within 30 days of receipt ⌄

| | |
|---|---|
| Color | White |
| Brand | Spanrde |
| Indoor/Outdoor Usage | Outdoor |
| Special Feature | Waterproof |
| Light Source Type | LED |
| Power Source | Solar Powered |

⌄ See more

About this item

- 【Solar Powered】: Solar energy supply, no need to replace the battery or extra utility electric cost.Come with efficient solar panel with higher energy conversion rate to absorb and convert sunshine to electric energy efficiently, Light sensor controls the solar globe lights auto on at dark and auto off at daytime.Patent Number: US7819545B2

Figure 1 (Current Amazon ASIN: B0CCVPGM31)



Solar String Lights Outdoor 18 Feet Waterproof Patio LED Lights with 25 Shatterproof Bulbs, 4 Light Modes, Hanging Lights Solar Powered for Backyard Garden Porch Yard Decor

$39.99

★★★★★

Solar and USB Charged: These pergola lights can work up to 10 hours after 4 to 8 hours of charging by sunlight. A 180 degree adjustable panel allows you to get the optimum sun exposure. The usb charge can be complementary when there is no sufficient sunlight during the day

Shatterproof and Waterproof: The led string lights are made of durable plastic, shatterproof and IP44 waterproof, can withstand temperatures, rainy, windy, or damp climates

4 Lighting Modes: The Outdoor solar string lights are designed with four alternative modes which are the quick flash, steady light, slow flash, pulsating light, 4 fabulous lighting modes designed to smooth you in every mood. These outside patio lights have a light sensor and automatically off at dawn and automatically on at dark

Energy-saving LED String Lights: The led string light total length 18 feet, 12 inch spacing between per led g40 bulbs (e10 base). Each led bulbs only 1w, help you save more electricity while giving out cozy illumination in your place. These bulbs are cool to touch after hours of use

Wide Decorative Use: The string lights need no outlet, perfect decoration for the bedroom, living room, and outside space like rooftop, deck, tent, porch, pergola, market, umbrella, balcony. Add a relaxed and romantic ambiance to your party, camping, wedding

PATENT NO: US7819545B2(US-20100008077 A1)

Figure 2 (Euorium.com)

12.     The patent number is also displayed on the packaging for Plaintiff's Products.



Figure 3

13.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

14.     The success of the Plaintiff's Products has resulted in significant infringement of the '545 Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), NewEgg Commerce, Inc. ("NewEgg"), SHEIN Distribution Corporation ("Shein"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-

6

commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

15.     The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

16.     Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*.

17.     Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the*

*Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id.* at p. 161.

18.     The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

19.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

20.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of the '545 Patent, and none of the Defendants are authorized retailers of Plaintiff's Products.

21.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22.     E- commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

23.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted

payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indications of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

24.     E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

25.     Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

26.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed the '545 Patent

in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

27.     Defendants' unauthorized use and/or manufacturing of the invention claimed in the '545 Patent in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (35 U.S.C. § 271)

28.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the '545 Patent.

30.     As shown in the example claim chart attached as **Exhibit 6**, the products being sold by Defendants infringes at least Claim 1 of the '545 Patent. The claim chart of Exhibit 6 is illustrative only and is made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of the '545 Patent.

31. Specifically, Defendants have infringed and continue to infringe each and every claim of the '545 Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

32. Defendants have profited by their infringement of the '545 Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

33. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the '545 Patent in connection with the offering to sell, selling, or importing of products that infringe the '545 Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

34. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

35. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the '545 Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

36. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.  Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon U.S. Patent No. 7,819,545 B2; and

      b.  Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon U.S. Patent No. 7,819,545 B2.

2)      Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, NewEgg, Shein, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe U.S. Patent No. 7,819,545 B2.

3)      That Judgment be entered against Defendants finding that they have counterfeited upon the FitTrack Trademark in violation of 15 U.S.C. § 1114.

4)      That Judgment be entered against Defendants finding that they have infringed upon U.S. Patent No. 7,819,545 B2.

5)      That Judgment be entered against Defendants finding that infringement of U.S. Patent No. 7,819,545 B2 has been willful.

6)      That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable warranty pursuant to 35 U.S.C. § 284, together with interests and costs.

7)      That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of U.S. Patent No. 7,819,545 B2.

8)      A finding that this case is exceptional under 35 U.S.C. § 285.

9)      That Plaintiff be awarded its reasonable attorneys' fees and costs.

10)     Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 30, 2023

Respectfully submitted,

/s/Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
Sameeul Haque
shaque@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:    (847) 969-9123
Fax:    (847) 969-9124

*Counsel for Plaintiff, Hong Kong Xingtai International Trade Co. Ltd.*

**VERIFICATION**

I, Chunhuang Liang, hereby certify as follows:

1.      I am the Chief Executive Officer for Hong Kong Xingtai International Trade Co. Ltd. As such, I am authorized to make this Verification on Hong Kong Xingtai International Trade Co. Ltd.'s behalf.

2.      I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in _____Shenzhen_____ on October 27, 2023

_____
Chunhuang Liang
CEO

16